# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>James Michael Ward and Terese Marie Ward,<br><br>Debtor(s).<br><br>Darrell Belvin Smith,<br><br>Debtor(s). | C/A No. 20-03311-HB<br><br>Chapter 7<br><br><br>C/A No. 20-03176-HB<br><br>Chapter 7<br><br>**ORDER REGARDING MOTION FOR REVIEW OF CONDUCT & SANCTIONING SAM BABBS III & THE BABBS LAW FIRM, LLC** |

**THIS MATTER** is before the Court on the *Motion for Review of Attorney Conduct, Cancellation of Retainer Agreement, Return of Fees, and Other Remedies to Include Monetary Sanctions* filed by the United States Trustee ("UST")[1] and Objection thereto of Sam Babbs III and the Babbs Law Firm, LLC (the "Firm").[2] The UST requests cancellation of the Firm's retention agreements, disallowance and return of funds paid to the Firm, and an injunction preventing Babbs and the Firm from filing cases in this Court.[3] In addition to the facts stipulated by the parties[4] and numerous exhibits, Richard F. Tallini and Babbs proffered testimony at the hearing and Babbs was sworn and cross-examined by the UST.

## FACTS

Babbs is an attorney licensed in Florida. He is the sole shareholder of the Firm, located in Florida and Virginia. Babbs and the Firm are each a "debt relief agency" as defined in 11 U.S.C.

---

[1] ECF No. 16, filed Oct. 22, 2020.
[2] ECF No. 21 (C/A No. 20-03311-hb); ECF No. 23 (C/A No. 20-03176-hb), filed Nov. 23, 2020.
[3] *See* ECF No. 52 (C/A No. 20-03311-hb) & ECF No. 56 (C/A No. 20-03176-hb), regarding partial settlement of the UST's Motion.
[4] ECF No. 39 (C/A No. 20-03311-hb); ECF No. 43 (C/A No. 20-03176-hb), filed Feb. 25, 2021.

§ 101(12A). The Firm recruits attorneys licensed in various states to assist with the filing and management of cases. An email solicitation to attorneys in South Carolina makes clear the Firm sought an arrangement whereby the Firm would perform most, if not all, prepetition work and local counsel would do a minimal amount, including appearing for the meeting of creditors and any other court appearances.

In December 2019, the Firm and an attorney licensed in South Carolina and admitted to practice in this Court ("SC Counsel") entered a "Counsel Agreement" whereby the Firm agreed to retain the SC Counsel as a "part-time independent contractor" to serve as "local counsel" for the Firm's clients in bankruptcy and other debt relief matters. The agreement states the Firm is "lead counsel as between them, and the client to have originated with and be primarily a client of [the Firm]." SC Counsel proffered that he is not an employee of the Firm, later stipulated that he also is not a partner or member of the Firm,[5] and believed there was in-house counsel at the Firm. SC Counsel's legal fees were paid by the Firm according to a schedule attached to the Counsel Agreement, including $440.00 per Chapter 7 case and $814.00 per Chapter 13 case filed in South Carolina.

James Ward, Teresa Ward, and Darrell Smith (collectively, the "Clients") are "assisted persons" as defined by § 101(3). The Clients found the Firm after conducting an internet search for bankruptcy lawyers. The Wards entered a retainer agreement with the Firm on April 20, 2020, as did Smith on June 5, 2020. The retainer agreements repeatedly state the Clients are retaining only the Firm to provide legal services. The agreements set forth a flat fee for the Firm's services, which are described therein to include:

> consultation with you regarding your financial affairs, the circumstances that led to them, the bankruptcy and non-bankruptcy alternatives to addressing your financial situation; it includes the preparation of all the documents regularly necessary to

---

[5] *See* ECF No. 52 (C/A No. 20-03311-hb) & ECF No. 56 (C/A No. 20-03176-hb).

> initiate and complete chapter 7/13 bankruptcy case in accordance with the applicable Bankruptcy Rules and Bankruptcy Code; it includes follow-up question[s] you may have with respect to the proceedings or the consequences [of] filing on your day-to-day financial affairs; includes consultation with respect to the importance and effect of a bankruptcy discharge; includes consultation on the reestablishment of your financial good standing following the conclusion of the bankruptcy case; it includes our attendance with you, and our participation in, a face-to-face meeting that is held in every bankruptcy case with the Chapter 7/13 trustee, and any follow-up work that may be required as a result of that meeting; it includes all correspondence and communication with creditors seeking information concerning that the underlying bankruptcy case, the assets and liabilities involved in the case, the discharge and timeline for entry of discharge, and other deadlines applicable to creditors of the case; includes all communication with your chapter 7/13 trustee concerning the administration of the bankruptcy case; and includes all matters which are typically occurring in a routine individual in action or service falls within the Flat Fee . . .

Clients communicated with and received assistance and advice from numerous individuals at the Firm in Virginia who are not lawyers. From April through July 2020, no attorney was involved in the prepetition legal services provided to Clients by the Firm, including advising Clients if they should file for bankruptcy relief and which chapter would be most appropriate, reviewing and discussing the retainer agreements, conducting financial interviews, requesting and reviewing Client documents, preparing and reviewing the petitions, schedules, and statements, and sending the same to the Clients for review, and answering any of the Clients' questions. The Firm misrepresented to the Clients that these actions were supervised by an attorney. That person would be Jeff Sherman, employed by the Firm as "in-house counsel." However, in pretrial filings Babbs and the Firm stipulated to facts as follows: Sherman is not an attorney (stipulated multiple times); the "in-house counsel" who reviewed and approved Smith's bankruptcy documents is not an attorney; the only attorney who reviewed Smith's bankruptcy documents was SC Counsel; and the Wards' financial interview was conducted by the Firm's non-attorney personnel. At the hearing, entirely contradicting these stipulations, Babbs stated that Sherman is an attorney licensed in Washington D.C., Maryland, and Virginia with forty years of experience. A quick internet search

3

conducted by the parties at the hearing determined Sherman's Virginia bar license was revoked in October 2020. Babbs seemed unaware of this fact. Even if Sherman was a licensed attorney during all relevant times, there is no evidence he supervised the Firm staff with the Clients' cases and he is not licensed in South Carolina. There is no evidence that Babbs was personally involved or otherwise supervised the work performed in the Clients' cases.

No attorney reviewed the Wards' bankruptcy documents until after they were already reviewed and signed by the Wards. An attorney first reviewed Smith's bankruptcy documents the day before they were filed. Neither the Firm, Babbs, nor SC Counsel were able to produce copies of the Clients' signed bankruptcy documents.

The Clients retained the Firm in April 2020 and June 2020, and the Wards paid the Firm's fee by May 2020 and Smith by June 2020. However, their cases were not filed for several months thereafter. The Clients repeatedly contacted the Firm seeking status updates, asking who their attorney would be, and requesting their cases be filed. There was no adequate explanation for the prolonged delays. Eventually, Smith's petition for Chapter 7 relief was filed on August 7, 2020, and the Wards' petition filed on August 20, 2020. The petitions were signed by SC Counsel and he is the attorney of record for the Clients' cases. No motion to appear *pro hac vice* was filed for Babbs in these cases.[6] The Wards did not speak with SC Counsel until after their case was filed and Smith did not speak with SC Counsel until shortly before filing.

The "Disclosure of Compensation of Attorney for Debtor" (Official Form B 2030) pursuant to 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016 ("Disclosures") filed with the Clients' petitions are signed by Babbs on behalf of the Firm. The Disclosures show the Firm agreed to accept and the Wards paid $2,295.00 and Smith paid $2,245.00 for legal services[7] described therein as:

---

[6] *See* Local Civ. Rule 83.I.01 (D.S.C.).
[7] Pursuant to the retainer agreements, these amounts included $335.00 for the filing fee.

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]

The Disclosures indicate the Firm is not sharing fees with anyone who is not a member or associate of the law firm. However, other Disclosures filed simultaneously therewith show SC Counsel received $440.00 from the Firm in each case.

The Firm has represented debtors in other cases filed in this Court.[8] Prior to the filing of these cases, the Firm has been the subject of allegations in other jurisdictions similar to those in this Motion.

## APPLICABLE LAW

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A) and the Court has authority to enter a final order. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Section 329(a) requires an attorney representing a debtor in a bankruptcy case to file a statement of compensation paid or agreed to be paid for legal services related to the case. Section 329(b) provides that if "such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to . . . the entity that made such payment." "It is the attorney's burden to show the reasonableness of his fees." *In re Busche*, C/A No. 15-02559-DD, 2015 WL 6501157, at *3 (Bankr. D.S.C. Oct. 27, 2015) (citing *In re Kestner,* No. 12–32831–RAG, 2015 WL 1855357, at *10

---

[8] SC Counsel filed with Babbs and/or the Firm six (6) cases in this District between August 7, 2020, and December 28, 2020. Similar motions are pending in two of those cases. *See In re Driggers*, C/A No. 20-03239-dd; *In re Marks*, C/A No. 20-3240-dd.

5

(Bankr. D. Md. Apr. 20, 2015) ("Once a question has been raised about the reasonableness of an attorney's fees under section 329, the attorney bears the burden of establishing that the fee is reasonable.")). Adequate and competent legal representation in connection with a bankruptcy case requires time to be spent before the filing of the bankruptcy case. *See In re Haynes*, 216 B.R. 440, 443 (Bankr. D. Colo. 1997) ("Before an attorney can properly advise a client as to whether they should (1) file for bankruptcy; (2) file a Chapter 7, or (3) file a Chapter 13, they must gather all the financial information from the client, analyze the information, and then explain the situation to the client, including at least a rough outline of what a Chapter 13 plan would look like. All that remains after that is for this information to be typed onto the forms and file the forms with the court.").

A fee agreement may be cancelled, and compensation denied under § 329(b), if an attorney fails to comply with disclosure obligations under § 329(a) and Fed. R. Bankr. P. 2016(b). *See In re TJN, Inc.*, 194 B.R. 400 (Bankr. D.S.C. 1996); *Turner v. Davis, Gellenwater & Lynch (In re Inc. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993). Attorneys representing debtors in bankruptcy cases have an affirmative duty to disclose all fee arrangements and all payments fully and completely. *See* § 329(a); Fed. R. Bankr. P. 2016(b).

Section 526 of the Bankruptcy Code places certain restrictions on the activities of debt relief agencies. Among those restrictions, a debt relief shall not:

> make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading[.]

11 U.S.C. § 526(a)(2). Further, § 528 requires debt relief agencies to provide assisted persons with a written contract explaining what services are to be provided and what fees are to be paid. 11 U.S.C. § 528(a)(1) & (2). Section 526(c) provides various remedies for noncompliance, including:

    (1) Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of this section, section 527, or section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person.

    (2) Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have—

        (A) intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person . . .

        . . . .

        (C) intentionally or negligently disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.

11 U.S.C. § 526(c) (emphases added). If the violation was intentional, or indicates a clear and consistent pattern or practice of violating § 526, the Court may "(A) enjoin the violation of such section; or (B) impose an appropriate civil penalty against such person." 11 U.S.C. § 526(c)(5).

Additionally, § 105(a) specifically grants bankruptcy courts the power to "issue any order . . . necessary or appropriate to carry out the provisions of this title." Bankruptcy courts have "broad authority" under § 105(a). *See Marrama v. Citizens Bank of Mass.* 549 U.S. 365, 375, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). However, they may not use § 105(a) or their inherent authority to issue sanctions that contradict or override explicit mandates of other sections of the Bankruptcy Code. *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014).

"[T]he Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives." *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996); *see also In re Chicora Life Ctr., LC*, 553 B.R. 61, 67 (Bankr. D.S.C. 2016) ("The provisions of the Bankruptcy Code, including the equitable powers of the bankruptcy court under § 105, are designed to protect the public interest." (citing *Fisher v.*

7

*Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998))).  To that end, § 105(a) has been interpreted to instill bankruptcy courts with the civil contempt power. *See In re Walters,* 868 F.2d 665, 669 (4th Cir. 1989) (affirming the bankruptcy court's order holding in contempt an attorney who failed to comply with an order to refund unapproved attorney's fees).  Thus, "[b]ankruptcy courts have inherent and statutory power to police the conduct of the parties who appear before them and to impose sanctions on those parties who abuse the judicial process." *In re Banner*, C/A No. 15-31761, 2016 WL 3251886, at *7 (Bankr. W.D.N.C. June 2, 2016) (quotation marks and citation omitted).

It is well-established that the solicitation of financial information and preparation of bankruptcy petitions and schedules constitutes rendering legal advice.  Therefore, if performed by a person not properly licensed, it may be considered the unauthorized practice of law.

> Advising a debtor regarding which documents to file with the court and/or the completion of the bankruptcy petition, schedules and other pleadings constitutes the practice of law.  Conduct constituting the practice of law includes a wide range of activities, including the preparation of legal instruments and advising clients of legal matters. *State v. Buyers Serv. Co., Inc.*, 292 S.C. 426, 357 S.E.2d 15, 17 (1987); *State v. Despain*, 319 S.C. 317, 460 S.E.2d 576, 578 (1995) (holding that the preparation of legal documents for presentation in family court constitutes the practice of law when the preparation involves the giving of advice, consultation, explanation, or recommendations on matters of law).  "Unquestionably, advising a person to file bankruptcy, and under what chapter to file, constitutes legal advice that can only be given under South Carolina Law by licensed attorneys." *In re Fleming*, C/A No. 17-05544-jw, slip op. *5 (Bankr. D.S.C. Feb. 22, 2018).

*In re Weathers*, 604 B.R. 13, 20-21 (Bankr. D.S.C. 2019); *see also In re Grimes*, 115 B.R. 639, 643 (Bankr. D.S.D. 1990) (solicitation of financial information and preparation of schedules is rendering legal advice, whether provided by lay persons or lawyers); *O'Connell v. David*, 35 B.R. 141, 143 (Bankr. E.D. Pa. 1983) *modified* 35 B.R. 146 (E.D. Pa. 1983) *aff'd,* 740 F.2d 958 (3d Cir. 1984) (actual preparation and direct or indirect filing for the debtor of chapter 7 petition and schedules constitutes the unauthorized practice of law); *In re Herren*, 138 B.R. 989, 994 (Bankr.

D. Wyo. 1992) (The solicitation of financial information and preparation of bankruptcy schedules is rendering legal advice whether provided by lay persons or lawyers; entity that provided copies of official forms to debtor, provided directions to complete the forms, and summarized and reformulated information solicited from debtor, was engaged in the unauthorized practice of law).

## CONCLUSION

The Disclosures and written retainer agreements between the Clients and only the Firm included work the Firm was incapable of doing without SC Counsel and did not disclose payment of SC Counsel or the need for those services. Therefore, such Disclosures and agreements contain untrue and misleading terms and do not explain clearly and conspicuously the services to be provided or the fees for such services. The Disclosures and agreements provided for prepetition legal services, including advising the Clients and preparing bankruptcy documents, which were performed by unsupervised or improperly supervised non-attorney personnel. The terms of the agreements gave Clients the false impression that a properly licensed attorney would represent them throughout their cases. At the hearing, Babbs attempted to contradict various stipulated facts related to involvement of a properly licensed attorney, and by doing so displayed either a disregard for the seriousness of this matter as whole, or extreme carelessness in preparing for the hearing.

The evidence shows the Firm violated § 526(a)(2), failed to satisfy its obligations under § 528(a), failed to adequately disclose compensation as required by § 329(a), and the compensation received was unreasonable under § 329(b). Further, the acts do not appear to be isolated or accidental, but rather intentional or at least extremely negligent. They arise from a for-profit business model and are present in numerous cases before this Court. Pursuant to §§ 329(a) and (b) and 526(c)(1) and (c)(2)(A), the retainer agreements between the Firm and the Clients must be voided and all fees returned. The Court also finds that a further civil penalty and injunction are

appropriate under §§ 105(a) and 526(c)(5) to remedy these violations and ensure future compliance with applicable rules and statutes.

Based on the foregoing, **IT IS, THEREFORE, ORDERED** that the UST's Motion is granted.

**IT IS FURTHER ORDERED THAT:**

1. the compensation paid to Sam Babbs III and/or the Babbs Law Firm, LLC by the Clients exceeds the reasonable value of the services provided and their payments must be returned pursuant to 11 U.S.C. § 329(b);

2. the retainer agreements between the Clients and Sam Babbs III and/or the Babbs Law Firm, LLC fail to comply with 11 U.S.C. § 528(a)(1) and (2);

3. the Disclosures filed by Sam Babbs III and/or the Babbs Law Firm, LLC fail to comply with 11 U.S.C. § 329(a);

4. the Disclosures filed by Sam Babbs III and/or the Babbs Law Firm, LLC contain untrue and misleading statements in violation of 11 U.S.C. § 526(a)(2);

5. pursuant to 11 U.S.C. §§ 329(b) and 526(c)(1), the retainer agreements between the Clients and Sam Babbs III and/or the Babbs Law Firm, LLC are hereby void and cancelled;

6. pursuant to 11 U.S.C. §§ 329(b) and 526(c)(2), Sam Babbs III and/or the Babbs Law Firm, LLC shall return the payment of $1,960.00 to the Wards and $1,910.00 to Smith (the amounts paid for legal services less the filing fee) in a manner that ensures **receipt** of those amounts by the Clients **within twenty (20) days from entry of this Order**. Upon failure to timely pay these amounts as directed, the amounts owed to the Wards and Smith shall increase by $100.00 per day, per

person/client beginning on the 21st day after entry of this Order and accruing until the amount to be returned, plus any additional amounts for late payment, are paid in full;

7. **within three (3) days after payment** to the Clients ordered in Paragraph 6 above, Sam Babbs III and/or the Babbs Law Firm, LLC shall file a declaration with this Court in the above-captioned cases attesting to their compliance with this Order and attaching evidence of the payments ordered herein. Failure to timely file these declarations with the Court is presumptive evidence that the payments ordered herein have not been made and may subject these parties to additional penalties; and

8. pursuant to 11 U.S.C. §§ 105(a) and 526(c)(5), Sam Babbs III and the Babbs Law Firm, LLC are enjoined from appearing in or assisting with any potential or existing bankruptcy case in the District of South Carolina until further order of the Court after adequately demonstrating that their practices comply with all applicable authorities.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**05/13/2021**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 05/13/2021